J-A02013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.G. | : | |
| | : | |
| Appellant | : | No. 1228 WDA 2019 |

Appeal from the Order Entered August 5, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD13-001728-006

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                 **FILED MARCH 16, 2020**

M.G. ("Mother") appeals from the order entered August 5, 2019, that denied her petition to relocate from Pittsburgh, Pennsylvania, to Hartford, Connecticut, with her daughter, E.A., born in July of 2004, and son, A.A., born in November of 2011 (collectively, "Children" or "the Children").  We affirm.

The trial court set forth the following factual and procedural history of this matter:

> [Mother and M.A. ("Father"), Children's father,] have had an acrimonious relationship since the[ir] divorce [in 2017].  The [c]ourt conducted a lengthy custody trial in 2015 and entered an order on May 21, 2015[,] which gave the parties shared legal and physical custody of the Children on a 2-2-5-5 schedule.
>
> For the past four-year period, the parties have shared custody with surprisingly few issues.  Father lives in Highland Park and Mother lives in Squirrel Hill.  Both parties own their homes. [E.A.] attends Ellis School and [A.A.] attends Winchester Thurston.  Mother has been employed for many years with General Electric Company including GE Healthcare and a subsidiary of GE

. . . . From time to time during the marriage[,] while the Children were younger, the parties relocated to advance Mother's career. Father is employed as a business analyst. . . . Mother has always earned significantly more than Father.

In 2018, GE was widely rumored to be in financial trouble and Mother began to look for employment outside of GE. Because of employment restrictions (including non-compete clauses) it was difficult for Mother to find employment in Pittsburgh at a similar position because of the contractual restrictions in the healthcare industry. Mother testified that most of the positions that were available in Pittsburgh would only pay $130,000.00 to $160,000.00 annually, which is significantly below her current income.

On January 30, 2019, Mother was offered a position . . . with [Company[1]]. The position included a $400,000.00 base salary and other financial perquisites. Mother accepted the job in March of 2019 without advising or consulting Father. [Company] is based in Hartford, Connecticut. [Company] hired Mother with the "general expectation" that she could work remotely until March of 2020 at which time she would be expected to move to Hartford permanently. Mother has been working remotely and traveling to Hartford on her non-custodial time.

On March 4, 2019, Mother filed a Notice of Relocation. Father opposed and a relocation trial was held before this [c]ourt on July 17, 2019. In addition to the parties, the [c]ourt heard testimony from representatives of Mother's current and former employers. At the conclusion of the trial, the [c]ourt issued its Order denying Mother's request to relocate. . . .[2]

_____

[1] The name of the company is known to both parties.

[2] The order was placed on the docket on August 5, 2019. However, there is no notation on the docket that notice was given or that the order was entered for purposes of Pa.R.C.P. 236(b). **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); **see also** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b).") At this

Trial Court Opinion, 9/17/19, at 1-2.  On August 14, 2019, Mother timely filed

a notice of appeal and concise statement of errors complained of on appeal.

Mother raises the following issues for our review:

1.  Whether the [t]rial [c]ourt abused its discretion and committed an error of law by denying Mother's request for relocation.

2.  Whether the [t]rial [c]ourt abused its discretion and committed an error of law in its application of the relocation factors at 23 Pa.C.S.A. § 5337(h).

   a. Whether the [t]rial [c]ourt erred by failing to consider the impact on the children if they are not afforded consistent time with Mother, and considering only the impact as it relates to Father, despite finding that both parents are significantly involved in the lives of the children.

   b. Whether the [t]rial [c]ourt erred by failing to consider the impact on the children's relationship with Mother if the children are separated from Mother, despite finding Mother credible with respect to her need to engage in a job search out of the area.

   c. Whether the [t]rial [c]ourt erred by indicating that it would not grant the relocation due to "monetary considerations," which is contrary to relocation factors 7 and 8, which require the court to consider the financial effect on the children and parent.

   d. Whether the [t]rial [c]ourt erred by placing significant weight on the need for consistency in the children's lives

_____

juncture, it would be a waste of judicial resources to remand the matter solely for the filing of Rule 236(b) notice.  Accordingly, in the interest of judicial economy, we regard as done what should have been done and address Mother's issues. **See Vertical Res., Inc. v. Bramlett**, 837 A.2d 1193, 1199 (Pa. Super. 2003) (holding that even where Rule 236(b) notice was never sent, "in the interest of judicial economy, we will regard as done what should have been done and consider the notice as having been mailed.").

- 3 -

as a justification for denying the relocation, while still finding that the children might not . . . be able to continue attending their private schools due to financial constraints.

e. Whether the [t]rial [c]ourt erred by failing to consider Father's ability to relocate to Connecticut with Mother and the children despite overwhelming evidence that Father has historically had, and still has, the ability to relocate with his employment and work remotely.

f. Whether the [t]rial [c]ourt erred by failing to consider that Father's flexibility with employment would allow him to regularly travel to Connecticut to be with the children at a rate greater than Mother given her employment obligations.

g. Whether the [t]rial [c]ourt erred by placing the parties' daughter's "own life, friends, activities, sports and maybe even boyfriends and summer jobs" as a consideration ahead of her relationship with Mother.

3. Whether the [t]rial [c]ourt abused its discretion and committed an error of law in its application of the custody factors at 23 Pa.C.S.A. § 5328.

a. Whether the [t]rial [c]ourt erred by finding that Mother minimizes Father despite evidence to the contrary.

b. Whether the [t]rial [c]ourt erred by failing to find that Father minimizes Mother despite testimony and evidence illustrating same.

c. Whether the [t]rial [c]ourt erred in its consideration of factor 8, noting that Mother "continues to harbor ill feelings" toward Father while making no finding that Mother has attempted to turn the children against Father.

Mother's Brief at 4-7.

We review Mother's issues according to the following scope and standard of review:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). In addition,

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer*, 902 A.2d at 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340. When making a decision concerning relocation that also involves a custody decision, "the trial court must consider all ten relocation factors and all sixteen custody factors" outlined in the Act. *A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013).

Section 5337(h) of the Act provides as follows.

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

As the party proposing relocation, Mother has the burden of proving that relocation will serve Children's best interest as set forth under Section 5337(h). **See** 23 Pa.C.S. § 5337(i)(1). In addition, "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

Section 5328(a) of the Act provides as follows.

**§ 5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has explained:

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. *E.D., supra* at 81. The record must be clear on appeal that the trial court considered all the factors. *Id.*

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B.*

- 9 -

***v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, __ Pa. __, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S.***[, ***supra*** at] 835.

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-823.

In denying Mother's request to relocate, the trial court considered the factors set forth at 23 Pa.C.S. § 5337(h) and 23 Pa.C.S. § 5328(a) as follows:

## RELOCATION FACTORS

**1. The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life[.]**

Both parents are significantly involved in the lives of these [c]hildren, and both parents bring different strengths to the parenting.

If the relocation were to be granted, Father's close relationship with these [c]hildren, including the extensive involvement in their lives, would very adversely affect his relationship with the Children, and their best interest[s].

**2. The age, development[al] state, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child[.]**

The daughter in this case is entering 10th grade and a relocation at this point may be difficult for her. Although the son is younger

and perhaps more able to adapt, the [c]ourt would never consider separating the Children (nor has either party asked that of the [c]ourt).

But the [c]ourt also considered that the time that the Children have spent . . . in Pittsburgh is one of the longest periods they have spent in one place since being school age, and the stability has benefited them.

**3. The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties[.]**

Although Mother will make a significant amount of money at her new job, Father earns a fraction of what Mother makes. Even if the [c]ourt could fashion an order that requires Mother to pay the lion's share of travel costs, this is not the only consideration.

Certainly, daughter is reaching the age of having her own life, friends, activities, sports, and maybe even boyfriends and summer jobs, so alternative arrangements may not be feasible. Son is younger and again more flexible; he is not far behind in moving into that phase of life.

**4. The child's preference, taking into consideration the age and maturity of the child[.]**

Neither party put the Children's preference into evidence.

**5. Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party[.]**

This [c]ourt heard the custody case just a few years ago and Mother's attitude toward Father, including false accusations of abuse, was a great concern. Although that issue has been somewhat alleviated, it is clear from the evidence presented, including numerous entries from Our Family Wizard, that Mother still despises Father and takes every opportunity to undermine him.

The [c]ourt has . . . <u>grave</u> concerns about how Mother might seek to exclude Father from the Children's lives in every way if she becomes the primary custodian in Hartford.

**6. Whether the relocation will enhance the general quality of . . . life for the party seeking relocation, including but not limited to, financial or emotional benefit or educational opportunity[.]**

The [c]ourt finds Mother credible that her current job was in possible jeopardy and that she needed to begin a job search. There is no doubt that the Children will benefit financially from Mother's new job, but it does not outweigh the damage that will occur to these Children's relationship with their Father.

**7. Whether the relocation will enhance the general quality of life for the child, including but not limited to financial or emotional benefit or educational opportunity[.]**

Except as noted above, that Mother's increased financial position may open opportunities for the Children, there is little additional benefit to the Children in this move compared to their current life.

**8. The reasons and motivation of each party for seeking or opposing the relocation[.]**

This is not a factor. Mother's motivation seems to be to maintain her income and not to hurt Father.

**9. The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or the abused party[.]**

This is not a factor.

**10. Any other factor affecting the best interest of the child[.]**

The Children are happy, healthy, and stable. The [c]ourt will not uproot them over monetary considerations. Although the [c]ourt has concerns that daughter may not be able to continue at Ellis if Mother's income significantly decreases, and daughter's continued attendance at Ellis is important to this [c]ourt's stability

determination, Father seemed to think an arrangement with Ellis could be worked out.

Despite the terrible acrimony of the original custody case, these [c]hildren have settled into a routine with maximum involvement with both parents. It is in the best interest of both Children to continue that.

This is a difficult case, but most relocation cases are. The [c]ourt believes that Mother sought out her new job in good faith in an effort to continue her career and also to maintain the lifestyle that the parties and Children have enjoyed.

But these [c]hildren have a stable and happy life in the Pittsburgh area and these [c]hildren are thriving.

If the [c]ourt were to permit relocation, there is no evidence that their life would be "better", and the [c]ourt has grave concerns about Father being able to be such a huge part of the Children's lives, both because of the distance and Mother's continued unwillingness to acknowledge Father as an equal parent.

## **CUSTODY FACTORS**

**1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?**

Although the parties' relationship in this case was very acrimonious at the time of [the] last trial, it does seem that that has calmed down quite a bit. While there isn't open warfare on Mother's part (Father never participated in attacks and fighting) Mother still refuses to work with Father in a business-like relationship and she continues to minimize Father.

**2. Is there, or has there been in the past, abuse committed by a party or a member of the parties' household?**

This is not a factor.

**3. What are the parental duties performed by each party on behalf of the child?**

Both parties have done very well in this factor. Although Mother utilizes nannies often, this is not problematic. It is the nature of Mother's work schedule that requires her to use nannies and her higher income assists in making a nice home and life for the Children. More importantly, there is no ill effect on the Children.

**4. Which party can best provide for stability and continuity in the child's education, family life and community life?**

In the event Mother decides not to relocate without the Children, this factor is equal.

**5. The availability of the extended family[.]**

Neither party has extended family in the area. Mother has no family in the Hartford area.

**6. The child's sibling relationships[.]**

The Children have no siblings other than each other.

**7. The well-reasoned preference of the child based on the child's maturity and judgment[.]**

Neither party presented evidence of the Children's preference.

**8. The attempts of a parent to turn the child against the other[.]**

As stated in factor 1, it appears that Mother continues to harbor ill feelings toward Father. Based upon her Our Family Wizard entries and general attitude, there was ample evidence of this.

**9. Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?**

This factor is equal.

**10. Which party is more likely to attend to the daily physical, emotional, and educational development, and special needs of the child?**

This factor is equal.

- 14 -

**11. The proximity of the residences of the parties[.]**

Currently the parties live very close. Mother, however, is requesting to move to Connecticut.

**12. Each party's availability to care for the child or ability of the parties to cooperate with one anther[.]**

Father works from home and is very available for the Children. As stated earlier, Mother has used nannies by necessity, but seems to make the most of every minute she spends with the Children. If Mother stays in Pittsburgh, this factor is equal.

**13. The level of conflict and the willingness and ability of the parties to cooperate with one another[.]**

See factor 1.

**14. The history of drug or alcohol abuse of a party or a member of the parties' household[.]**

N/A

**15. The mental and physical condition of a party or member of a party's household.**

N/A

**16. Any other relevant factor[.]**

As stated earlier, it was never mentioned at trial whether Mother would relocate without the Children. While the relocation factors address other important issues, the [c]ourt has no issues with Father having primary custody of the Children if Mother moves. The [c]ourt firmly believes that it is in these Children's best interest to have maximum <u>and</u> <u>equal</u> time with both parents, and with the distance to Hartford, that is simply not possible if Mother relocates.

Trial Court Opinion, 9/17/19, at 3-7 (emphases in original).

Mother's brief combines the first and second issues listed in her statement of questions involved into one argument with multiple subparts.

We address them together for ease of disposition. In general, Mother argues that the trial court erred when it failed to conclude that Mother met her burden of establishing that relocation will serve Children's best interests. Mother's Brief at 16-19. Mother also asserts the trial court erred by considering the Section 5337(h) relocation factors "in a cursory manner and without reference to appropriate, supporting evidence." *Id.* at 19.

With respect to Section 5337(h)(1), Mother contends the trial court failed to consider the impact on Children and Children's relationship with Mother if they are not afforded consistent time with Mother. Mother's Brief at 19-20. Mother faults the trial court for focusing only on the negative impact that relocation would have on Father's relationship with Children. *Id.* at 20. Additionally, Mother argues that the trial court disregarded evidence of her close relationship with Children, ignored the role Mother plays in Children's lives, and punished her for relocating to maintain the role of the financially responsible parent. *Id.* at 22-23. Mother observes that the order places her in a precarious situation, requiring her to relocate to Hartford without Children, thereby losing significant custodial time while providing more financial support, or remaining in Pittsburgh to continue a shared physical custody arrangement while reducing Children's lifestyle. *Id.* at 23. Similarly, Mother claims that the trial court improperly considered Section 5337(h)(3), because the court focused on E.A. and her connections to Pittsburgh, such as playing sports and attending church, rather than considering the significant relationship E.A. shares with Mother. *Id.* at 33-34.

- 16 -

Moreover, Mother contends that the trial court failed to appropriately consider Section 5337(h)(7) and (8), because it failed to address the financial benefits of the relocation for Mother and Children. Mother's Brief at 24. Mother argues that permitting her to relocate to Hartford would allow her to save for Children's secondary education, and that, while the quality of life in Hartford may not be significantly better than the current quality of life in Pittsburgh, the situation in Pittsburgh is unsustainable because Mother can no longer earn as much money. *Id.* at 24-25.

Relatedly, Mother asserts that, because she likely cannot afford to send Children to private school if she remains in Pittsburgh at a reduced salary, the trial court should have considered the prestigious public schools in Hartford, as well as the potential that Children would switch schools in Pittsburgh. *Id.* at 26-27. Mother faults the trial court for failing to assess the source of Children's stability, Mother's income, and for minimizing the likelihood that Children will have to switch schools, notwithstanding Father's "belief" that Children may qualify for scholarships at their private schools. *Id.* at 27-29. Mother characterizes Father's "belief" as unsupported by the record. *Id.* at 28-29.

Although Mother acknowledges Father testified that Children would be devastated by moving to Hartford, she contends that Father conceded that E.A. would be a good student under any circumstances, and that A.A. would make friends wherever he goes. *Id.* at 27. Relying on Father's testimony that E.A. can adapt to new circumstances, Mother argues trial court erred in

concluding that "E.A. is entering 10th grade, and a relocation at this point may be difficult for her." *Id.* at 28.

Mother also argues that the trial court erred by not considering Father's ability to relocate to Hartford, observing that Father relocated with Mother a number of times during their marriage, and that, even if Father did not move to Hartford, Father's job would allow him to visit and work remotely from Hartford. Mother's Brief at 30-33. In contrast to Father's flexible work arrangements, Mother contends that her job requires her presence in Hartford. *Id.* at 32. Mother argues that Father's work flexibility, combined with his lack of family in Pittsburgh, suggest that Father's objections to the relocation are not asserted in good faith. *Id.* at 31.

In addition to setting forth its findings and conclusions under Sections 5328(a) and 5337(h), the trial court authored an opinion, observing:

> All the matters Mother complains of on appeal are addressed in the [c]ourt's discussion of the relocation and custody factors. The [c]ourt did consider the monetary factor and Father's flexible job. It considered the impact that time away from Mother would have on the Children equally with the impact that time away from Father would have. While the parties were married and living together as an intact family, Father was amenable to relocating when Mother obtained a more lucrative position. Father is established in the area and does not want to move to Hartford. Following the last move to Pittsburgh, the parties have divorced and undergone an acrimonious custody battle. For the past four years, things have settled down and the Children are doing well in their current environment. They have equal, quality time with both parents. They attend private school and live in close proximity to both parents. [E.A.] is entering tenth grade and a change of schools at this time in her life would be difficult. Father has a close relationship with the Children and is extensively involved in . . . their lives. While the acrimony between the

- 18 -

parents has somewhat subsided, there was ample evidence at the relocation hearing that Mother continues to harbor ill feelings towards Father. Mother fails to consult or communicate with Father on issues of importance, such as the potential relocation and the new schools she had chosen for the Children. She is critical of Father's manner of discipline. She has been unwilling to allow Father additional custody time even when she is out of town and the Children are with hired nannies.

Father is doing well in his present position. His company has a presence in Cranberry Township. He has established a life for himself and the Children in Pittsburgh. He does not want to uproot himself to follow Mother to Connecticut. Transportation between Pittsburgh and Hartford is time consuming and expensive. If Mother were to relocate to Connecticut with the Children, [the Children's] relationship with Father would be seriously impeded.

The Children attend a local church, are bonded to the Ethiopian community, play on traveling soccer teams and have close friends here. [E.A.] suffers from anxiety and is undergoing therapy in Pittsburgh. Mother is suggesting moving [E.A.] from Ellis School with 129 students, to a public school in Connecticut with over 1500 students. The [c]ourt decided based on the evidence presented that Mother failed to prove that it was in the best interests of the Children to completely uproot them from an environment in which they are doing well just for a higher paying position. Mother is able to find suitable employment in Pittsburgh, just at a somewhat lower salary.

Trial Court Opinion, 9/17/19, at 8-10.

The record supports the trial court's conclusion. Mother testified that during the parties' marriage, the family lived in Atlanta, Seattle, and Istanbul, Turkey, before moving to Pittsburgh in 2012 following the breakdown of the marriage. N.T., 7/17/19, at 22-23, 30. Throughout the marriage, Mother worked for General Electric ("GE") or subsidiaries of GE. *Id.* at 22. After moving to Pittsburgh, Mother became increasingly concerned about her future

employment with GE as GE encountered business difficulties. *Id.* at 27-28.

Mother began looking for employment in Pittsburgh, but was unable to locate

a position with comparable pay. *Id.* at 27-29.

Mother then made the decision to expand her search area, explaining:

Yeah. I mean look, I apologize, I'm pretty emotional, I wasn't expecting that. So my life is super simple. It's like my kids, you know, what they enjoy. We love museums, we love going to games, we love playing at the park. We live across from a swimming pool, a basketball court, a playground. We touch green all weekend. And so I had set up this little cul de sac in Squirrel Hill, whatever need that they have is met and every need that I have is met. So you don't wake up and want to leave, you know.

I came here and I have gotten healing, I have gotten support. . . . I'm leaving it. So you don't do that lightly. This is a decision you make because you have to, because you're the responsible parent who has to take care of your kids, pay for schooling, fifty thousand dollars between Winchester and Ellis and that's it.

N.T., 7/17/19, at 31-32.

Accordingly, in the fall of 2018, Mother began the process of applying

for a job in Hartford, Connecticut, eventually receiving an employment offer

that included a salary of $400,000, as well as a potential bonus and other

perquisites. N.T., 7/17/19, at 35. Mother could not locate an equivalent job

in western Pennsylvania. *Id.* at 36.

In addition to the pecuniary benefits of relocating, Mother contended

that Children would be able to attend public schools that Mother described as

"strong" academically and athletically. *Id.* at 41-42. Mother was uncertain

precisely where she would live, but believed that E.A., who was going into

tenth grade, would attend Hall High School. *Id.* at 42-44. Mother believed

that A.A. would attend Bugbee Elementary for second grade. *Id.* at 43-44. Mother observed that there would be significant monetary savings by having Children attend free public schools, as opposed to Children's private schooling in Pittsburgh, which cost approximately $50,000 per year. *Id.* at 45-46. Mother testified that she was "in substantial debt" and did not have the ability to pay for college, but that not having to pay for private school would allow her to save money for college.[3] *Id.* at 46-47.

Mother asserted that she was not worried about Children transitioning to new schools in Hartford. N.T., 7/17/19, at 47. Further, to the extent that Father moved to Hartford, Mother expressed a willingness to continue the 2-2-5-5 custody schedule. *Id.* at 53. However, Mother was concerned about relocating to Hartford if Father remained in Pittsburgh with Children. *Id.* at 53-54. Although Mother agreed that Father loved Children, she described Father as engaging in "punitive parenting" that added stress to Children's lives. *Id.* at 54-55. Mother believed that Father's parenting was problematic because Children are "very sensitive," although she clarified, "[T]heir counselor would say they have anxiety and bouts of depression." *Id.* Mother also believed that Father was overly critical of Children. *Id.* at 55-56. Additionally, Mother questioned Father's ability to care for Children, testifying that she receives calls from Children frequently when they are with Father, primarily when they need something. *Id.* at 57-58. Yet, Mother also claimed

---

[3] In 2018, Mother earned more than $500,000. N.T., 7/17/19, at 129.

that she is not always able to talk to Children when they are in Father's custody. *Id.* at 94-95.

In contrast to Father's relationship with Children, Mother described her relationship as "authentic, loving, kind, nurturing, [and] attached." N.T., 7/17/19, at 47. Mother explained her role as "the CEO at home. Chief emotional officer." *Id.* at 52. Further, Mother noted that she provides compassion and structure. *Id.* at 55. Mother acknowledged that some of the structure in her home came from her frequent use of a nanny service, including for overnights. *Id.* at 78-80, 85-86.

Mother also acknowledged difficulties communicating with Father, admitting that she never informed Father of her desire to relocate prior to providing him notice of the proposed relocation. *Id.* at 67. When Father asked Mother about her living arrangements and school choices in Hartford, Mother simply informed Father that the decisions were contingent on obtaining permission to relocate. *Id.* at 72-73. Mother did not tell Father that she had already identified likely schools that Children would attend. *Id.* at 72-74. In general, Mother claimed that she was flexible but Father was not willing to compromise. *Id.* at 90-91. Nonetheless, Mother acknowledged that when nannies stayed with Children overnight, and Mother was not present, Mother did not offer the time to Father. *Id.* at 89-90.

Further, Mother admitted that when Father and Children came home from a trip abroad, Mother refused to allow Children to sleep for an extra hour before transitioning to Mother's custody, despite the fact that Children were

picked up by a nanny, and Mother was in India. N.T., 7/17/19, at 91-93. Mother explained that Children were returning to school shortly and she was worried about Children having the school supplies and clothes they needed. *Id.* at 92-93. However, Mother also testified that she allowed Father to take Children for an extra week of vacation. *Id.* at 140.

The lack of communication extended to Children's medical issues. Although Mother was aware that E.A. needed a root canal, she did not tell Father, who learned of the proposed procedure through a phone call from the orthodontist. *Id.* at 99-102. When Father wrote to Mother regarding the procedure, Mother did not provide any information about why E.A. needed a root canal, who would perform the root canal, or when the root canal would take place. *Id.* at 101-102. Similarly, Mother had a nanny take E.A. to a medical appointment, and could not recall whether she offered Father the opportunity to take E.A. to the appointment. *Id.* at 123-127. Mother also testified that during her custodial time, A.A. was in a car accident while being driven by a nanny. *Id.* at 120. When Father asked Mother why A.A. was not in a booster seat, Mother chastised Father for implying she did not appropriately care for A.A. and for not asking about the nanny's health. *Id.* at 120-122.

Father testified that he kept his job as the family moved from Atlanta to Seattle to Istanbul, and that he could move to Hartford without any repercussions for his job. N.T., 7/17/19, at 241-243, 252. Father also acknowledged that Mother is the primary wage earner and consistently makes

more money than Father. *Id.* at 245. However, Father was less concerned with the monetary benefits of Children moving to Hartford and more concerned about the impact on Children. Father explained that E.A. is connected to Pittsburgh, as she has close friends that she has met within the Ethiopian community, at school, and through her travel soccer team. *Id.* at 155-158, 160-161. A.A., who Father described as extroverted and thoughtful, also has friends at school and in the community. *Id.* at 165-166, 185. Additionally, Children attend church and are connected to the Ethiopian community in Pittsburgh, taking language lessons and attending activities. *Id.* at 157-58, 161. Father also believed that it would be devastating for E.A. to go from a high school with 129 students to a high school in Hartford with 1,500 students, noting that "making friends takes her a while." *Id.* at 160. However, he also acknowledged that E.A. would be a good student under any circumstances, and that A.A. would make friends wherever he lives. *Id.* at 255-256.

Additionally, Father expressed concern that Mother moved jobs every four or five years, and that the cost of living is higher in Hartford. *Id.* at 194, 247-248. Father was unwilling to consider relocating to Hartford, asserting that it would be better for everyone for Mother to stay in Pittsburgh and make less money. *Id.* at 251, 265. Father stated, "right now I feel like the best interest of [Children] is staying in Pittsburgh and staying in the community they are connected to, going to the school they are connected to." *Id.* at 267.

Father also expressed concern for Children if they relocated to Hartford without him. Father testified that he and Children enjoy a consistent, close, and loving relationship. N.T., 7/17/19, at 149-150. Father further testified that Children are very attached to him. *Id.* at 153. Father asserted that the routine at his home is for A.A. to go to bed at 7 p.m., while E.A. is asleep by 9 p.m. *Id.* at 162. Father claimed that, at Mother's house, Children stay up much later and have difficulty sleeping. *Id.* at 163. Father also asserted that Children are parented by twenty-three different nannies. *Id.* at 166-167.

Father disagreed with Mother's assessment of his parenting, claiming that he utilizes appropriate discipline. N.T., 7/17/19, at 168. Nonetheless, Father acknowledged an incident occurred involving A.A. threatening to harm himself because Father yelled at him. *Id.* at 177-178. Father insisted that he did not yell at A.A. *Id.* Despite the seriousness of the incident, Father also did not inform Mother about it, allowing Mother to learn of it from Children. *Id.* at 236. Father asserted that A.A.'s threat was a way for him to return to Mother's house where she is more permissive. *Id.* at 178-179. As a result, A.A. attended counseling, and both Mother and Father were supposed to take A.A. to counseling during their custodial time. *Id.* at 174-178. However, at the time of the hearing, Mother had not taken A.A. to counseling in almost six months. *Id.*

Father also testified that Mother does not encourage his relationship with Children, claiming he has not been able to speak to Children during Mother's custodial time. N.T., 7/17/19, at 164-165, 182-183. In contrast,

Father asserted that, during his custodial time, he encourages Children to call Mother. *Id.* at 183. Further, Father testified that in general, Mother expects Father to provide substantial information to her, but Mother provides Father very little information. For example, Father provides Mother with medical records for Children but Mother does not do the same. *Id.* at 186-187, 197-198, 213-214. Father also recalled an incident when a nanny took E.A. to a medical appointment for migraines. *Id.* at 211-212. Mother provided no information, and, when Father took E.A. to a follow-up appointment, the doctor was upset that E.A. was not following the treatment plan suggested at the last appointment. *Id.*

With respect to Children's schooling, Father testified that he believed that the private schools in Pittsburgh would review Mother's and Father's income and "there are scholarships, you know, both kids would possibly qualify for based on income." N.T., 7/17/19, at 246-247. Although Father acknowledged that Children could "potentially have to switch schools," he claimed that Mother did not inform him of difficulties paying for private schooling. *Id.* at 170, 247.

Overall, Father contended that it is important for Mother to be in Children's lives and that the monetary gains provided by relocating to Hartford do not justify uprooting Children. N.T., 7/17/19, at 244, 266-267. However, he also criticized Mother for her constant accusations, claiming that it would be good for Children to spend time with Mother as long as she stopped saying negative things about him. *Id.* at 185-189, 264-265.

We reject Mother's arguments that the trial court failed to adequately consider Father's ability to relocate to Hartford; the potential that Children will no longer be able to attend private school;[4] the monetary benefits to relocation; or the need for stability and the impact on Children's relationship with Mother. Absent safety concerns, which are not present here, the amount of weight given to any factor is within the sound discretion of the trial court. The trial court considered the issues suggested by Mother, including Children's relationship with Mother and the monetary benefits of relocating. It found they did not outweigh the benefits to Children remaining in Pittsburgh. Because we defer to the trial court's credibility and weight determinations, *see A.V.*, 87 A.3d at 820, and as outlined above, the trial court's findings are supported by the evidence of record, we conclude that the trial court did not abuse its discretion in denying Mother's request to relocate.

Further, we reject Mother's argument that the trial court engaged in an improper "cursory evaluation" of the relevant relocation factors. There is no required amount of detail for the trial court's explanation as long as the enumerated factors are adequately considered, and the decision is based on those considerations. *A.V.*, 87 A.3d at 822-823. Here, the trial court

---

[4] Mother faults the trial court for crediting Father's assertion that scholarships would be available to Children at their current schools. However, Mother argues Children "**could potentially** have to switch schools regardless of the proposed relocation." Mother's Brief at 29 (emphasis added). Given the uncertainty about whether Children would continue to attend private school, the trial court did not err in evaluating the current schooling situation. To the extent that Children are no longer able to attend their current schools, Mother can seek the appropriate relief in the trial court.

adequately considered the enumerated factors, and its decision is based on those consideration. Thus, the trial court's analysis is plainly sufficient to satisfy this standard. Accordingly, Mother's first two issues fail.

Mother also contends that the trial court erred in its evaluation of several of the Section 5328(a) custody factors. Mother's Brief at 34. In particular, Mother argues that the trial court failed to appropriately consider Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the children and another party. *Id.* at 36. Mother asserts that the trial court improperly concluded that she minimized Father, while failing to find that Father minimized Mother. *Id.* Mother contends that she made efforts to encourage Children's relationship with Father, while Father minimized Mother and failed to share critical information, including A.A.'s threat of self-harm. *Id.* at 37-39.

Mother further argues that the court erred in its consideration of Section 5328(a)(8), the attempts of a parent to turn the child against the other parent. Mother contends that the trial court focused on outdated and irrelevant conduct to conclude that Mother continues to harbor ill feelings towards Father. *Id.* at 40-41. Mother further contends that although the trial court concluded that Mother failed to communicate with Father on issues of importance, is critical of Father's discipline, and is unwilling to allow Father additional custody time, even when Mother is out of town and Children are with hired nannies, these findings do not suggest that Mother attempted to turn Children against Father. *Id.* at 41.

Our review of the record supports the trial court's findings. The evidence reflected Mother's inability to communicate with Father, Mother's inflexibility with respect to custody time, and Mother's denigration of Father. Although much of this testimony was disputed, we defer to the trial court's credibility and weight determinations. *A.V.*, 87 A.3d at 820. Further, while Mother faults the trial court for considering that Mother harbors ill feelings against Father, which she asserts is unrelated to whether she attempted to turn Children against Father, this finding must be read in conjunction with the court's analysis of Section 5328(a)(1).[5] Contrary to Mother's argument, the trial court considered that Mother attempted to turn Children against Father by

_____

[5] The trial court considered the pertinent custody factors as follows:

> **1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party[.]**
>
> Although the parties' relationship in this case was very acrimonious at the time of last trial, it does seem that that has calmed down quite a bit. While there isn't open warfare on Mother's part (Father never participated in attacks and fighting) Mother still refuses to work with Father in a business-like relationship and she continues to minimize Father.
>
> * * *
>
> **8. The attempts of a parent to turn the child against the other[.]**
>
> As stated in factor 1, it appears that Mother continues to harbor ill feelings toward Father. Based upon her Our Family Wizard entries and general attitude, there was ample evidence of this.

Trial Court Opinion, 9/17/19, at 5-6.

minimizing Father's role.  Testimony of record supports this finding, and the trial court did not abuse its discretion by crediting the testimony.

The trial court carefully and thoroughly considered Children's best interests with respect to Mother's relocation request.  We discern no abuse of discretion, and we affirm the order denying Mother's request to relocate.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/16/2020